The court will proceed to the fourth case, Garcia-Arce v. Barr. Ms. Chun. Good morning, Your Honors. May it please the court, my name is Lisa Chun and I represent the petitioner, Ms. Garcia. Ms. Garcia is a 38-year-old Mexican citizen. She is the mother of two lawful permanent resident children and three U.S. citizen children. She is also the wife of a U.S. citizen. Ms. Garcia suffers from depression, anxiety, and bipolar disorder. She has a history of attempted suicide and institutionalization after each attempt. Today we are requesting that this court remand her case to the immigration judge so that she may pursue her claim of fear, persecution, and torture based on her very severe mental health disabilities. Ms. Garcia was unable to raise these in the administrative proceedings below due to the ineffective assistance of her prior attorney. Today I'd like to focus on three issues of prior counsel, number one being that prior counsel failed to properly raise Ms. Garcia's claim based on mental health, number two that prior counsel failed to argue this court's precedential decisions on Mexican cat claims, and number three that prior counsel improperly advised Ms. Garcia that she was eligible for bond. The standard of review is that the Board of Immigration Appeals committed legal error and abuses discretion in one, holding that prior counsel was ineffective, two, failing to consider the new evidence presented in the motion to reopen, and three, failing to mention against torture claims. With the first issue, the board held that prior counsel's decision to forego the mental health claim was a strategic decision. This court and Sanchez v. Kessler held that when counsel foregoes a meritorious claim it is deficient performance. We would argue that prior counsel's actions were not strategic but were deficient. It's clear that prior counsel did believe that Ms. Garcia's mental health was worth pursuing. She included Ms. Garcia's mental health on the Form I-589 application. Prior counsel also submitted mental health records of Ms. Garcia when she was detained in immigration custody. And prior counsel also attempted to elicit testimony from Ms. Garcia regarding her mental health illness. However, the Department of Homeland Security objected and the immigration judge sustained the objection because prior counsel had failed to lay a proper foundation. We also know that prior counsel possessed medical records that were not submitted to the immigration judge. These medical records included a suicide attempt by Ms. Garcia in 2016, followed by her commitment to a psychiatric hospital. These medical records also showed that Ms. Garcia expressed that the very thought of deportation caused her great anxiety. We also know that prior counsel possessed the 2017 Human Rights Report. She did submit portions of this report to the immigration judge, however, inexplicably she did not include the portion entitled Persons with Disabilities. This portion of the report has the Department of State documenting the widespread abuse and mistreatment of individuals in mental health facilities in Mexico. We also cited to this court's decision in Koyovsky v. Mukasey, where this court held that persons with mental health illness could be a cognizable particular social group, in addition to citing two Third Circuit, Fourth Circuit, and Ninth Circuit cases holding the same. So we would argue that based on the actions of prior counsel, based on the case law, and based on the new evidence submitted, that Ms. Garcia's mental health claim was meritorious, and prior counsel's failure to pursue this claim was not any kind of strategic decision, but was merely deficient performance. Ms. Chun, I guess we see these kinds of arguments much more often in criminal habeas cases, of course, and you're relying on, for example, Supreme Court precedents that set standards for performance in capital cases. Here, we're talking about a private representation agreement between Ms. Garcia Arce and her client, and Ms. Smith, if I recall what I've read about her testimony, said that she thought basically the better way to go, she was aware of the mental health issues, but thought that the better way to go was to emphasize the danger posed by drug cartels. We've had cases in which we have remanded because of evidence about the danger of drug cartels in Mexico, and that that was basically a more promising route. It sounds like if we adopt your theory, tell me why I may be wrong about this, that the person subject to removal here basically gets to try Plan A with one lawyer, and if that doesn't work, try again with Plan B by attacking the first lawyer as ineffective. Your Honor, respectfully, I do, so one of the issues that we did raise about prior counsel's ineffectiveness was that she characterized Ms. Garcia's fear as gang-based violence, and she cited to withholding of removal cases. She did not cite to this Court's precedent in Rodriguez-Molinera or Mendoza-Sanchez or Rivas-Pena, where this Court has recognized that a fear of persecution and torture based on Mexican cartels can be meritorious. She focused on gang violence, and she simply did not cite to those three very favorable Convention Against Torture claims based on the specifics of Mexican cartels and how powerful Mexican cartels are and how there's documentation and support that those cartels work closely with Mexican government officials. Okay. One other concern I have about this case has to do with the issue of relocation within Mexico. I understood the immigration judge in the original hearing to have concluded that based on the petitioner's own testimony, it appeared that she would be able to relocate to Mexico safely somewhere in Mexico. Your Honor, the prior counsel, she framed the fear as a fear based on the particular social group of family, and she characterized the persecutor as a gang member. Tacos. Yes, Your Honor. And so the context of the widespread presence of Mexican cartels and the context of the Mexican cartels being relocated and working with corrupt government officials simply was not argued in front of the judge, therefore the relocation issue, it seemed as though it was a private issue between family, a brother selling his sister to a drug dealer who he owed money to, and therefore the context of Mexican cartels and the widespread corruption just wasn't available or argued to the immigration judge. That actually goes to my second point that I was going to bring up was that prior counsel did not argue that this case was about drug cartels and the Convention Against Torture and that it was just a gang based fear and that it was based on her relationship to her brother. Was the issue of Mexican cartels raised early as a reason by the petitioner? Wasn't it gangs? It was not raised before the immigration judge. Right. I'm sorry, Your Honor. Yeah, no, that's exactly right. The cartel issue was not before the immigration judge, was it? It was not, Your Honor, and I'd just like to point out that the Board of Immigration didn't raise that issue at all. It completely ignored that issue that we raised. Is your position, because of the obvious existence of these cartels, that that should apply even if the petitioner hasn't specified the cartel situation because of our current observation  Well, I would say that Ms. Garcia did call Tacos a narco and a drug trafficker. It was her prior counsel who then characterized him as a gang member and not a cartel member. Well I'm just wondering what kind of information she got from her client. She did tell, Ms. Garcia did tell her prior attorney that Tacos was a narco and a drug trafficker. I see that I am approaching my time. I'll let you have two minutes for a rebuttal. Okay, thank you. Thank you, Ms. Jones. Ms. Balaban. Good morning. May it please the Court. Kate Balaban for the government. This case concerns consolidated two petitions for review. One concerns the underlying merits of termination by the agency that the petitioner was not entitled to withholding of removal. The second one is the motion to reopen the denial based on allegations of ineffective assistance of counsel. I'm going to start with the second one because I think it's the more important issue in the case. And I think Judge Flom's question, as related to Kat, relates to the entire ineffective assistance of counsel case. Basically what we have here is the tough issue is that yes, there was evidence of mental illness, and yes, under Kovaleski you can make out a case for future persecution based on mental illness. But that's not what the alien in this instance communicated in the credible fear interview. It's not the fear that she articulated. And I think that in order to rule that the counsel was deficient in some way, you would have to say that the attorney, the prior attorney, needed to put words into the mouth of the petitioner. The petitioner said in the credible fear interview, there's a specific part of that interview that relates to nexus, which is the on account of prom. And the question is asked, is there any other basis on which you fear return to Mexico? And she said no. So based on that, going to Judge Hamilton's point, given that there are time and money constraints, the prior attorney in the affidavit stated quite clearly she didn't pursue that. She didn't pursue that. And I didn't find a case precisely with this set of facts, but I think it flows from the Strickland standard and the Knowles standard in the Supreme Court that the counsel rendered here was not ineffective. It wasn't deficient in any way. And the only, I noted that Judge Barrett is very interested in prejudice. The only prejudice issue here is relates to the bond, which clearly there was no prejudice. So we see it as certainly on the motion to reopen, not just no deficient counsel, as well. I'll leave it at that unless you have questions. Well, I would ask one, Ms. Bellman. If the attorney was aware of a mental health issue and chose not to present it, is there any, should we look at that through a special lens of maybe the client wasn't in a position to advise because of her mental health situation? But if the attorney was aware of it, perhaps in this case she should have at least advanced that? It's a tough and interesting question. I understand from the record that the attorney was speaking to the husband about the mental health issue. And I think the attorney was interested in the mental health issue not so much as a basis for future fear as an independent nexus basis, but as it might have accumulated and made the future fear of her prior persecutors worse. So I think she investigated it and I think she looked at it. That on account of wrong is hard to make out, the mental illness. The case law in this circuit and even in the Ninth Circuit shows that you have to exhibit mental illness to the extent that you could become a target of future persecution. So it's a tough case to make out anyway. Given that she didn't articulate it, her husband didn't articulate it, the only thing that petitioner can argue now is that the attorney, prior attorney, should have read that in and pressed it. And I think that is not in keeping with Strickland or Knowles in terms of precedent in this case. I'm also prepared to answer any questions that you have about the sua sponte jurisdictional question, but to the extent you're not concerned about it, we'll leave it at that. Thank you. Thank you. Ms. Shum. Thank you, Your Honors. I wanted to address counsel's point that prior attorney didn't want to put words in Ms. Garcia's mouth. So I think the prior attorney's post hoc rationale that she considered it and in her reasonable professional opinion ruled that claim out is inconsistent with her prior actions. She did include the mental health as a basis of fear on the asylum application on the 589. She tried to include records, mental health records, in front of the immigration judge and she tried to elicit testimony. So if she really thought it was a dead end case, why would she have taken these actions? She also had that Department of State human rights report. The Department of State thought it was significant enough to talk about the widespread abuse and mistreatment that people who had mental health disabilities were suffering in Mexico. If it were such a strain that she would fear persecution, why would the Department of State have included that in their human rights report? In addition, Ms. Garcia brought up her mental health illness at the reasonable fear interview and that was an interview that she had done with no help from prior attorneys. So she did tell the asylum officer that since the age of 12 she was diagnosed with depression, bipolar disorder and anxiety and had been taking medication. So I don't think it's that far of a stretch to go from knowing about her mental health illness, having country condition reports that people with mental illness are subject to abuse and torture in mental health facilities and creating that argument. I don't think that that was such a stretch and then there's case law to support it. So I think it was clearly ineffective and not a strategic decision. Thank you Ms. Johnson. Thanks to all counsel. The case is taken under advisement.